**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| United States of America, | Case No. 3:11CR155 |
| Plaintiff | |
| v. | **ORDER** |
| Glenn David Williamson, | |
| Defendant | |

This is a criminal case in which the defendant stands indicted for alien smuggling. The indictment results from a traffic stop. The defendant seeks to suppress statements he made during and after the stop. He also seeks dismissal of the indictment or, alternatively, a ruling *in limine* on the basis of the intervening deportation of potential witnesses. (Doc. 11).

Following a hearing and submission of supplemental briefs, the defendant's motion to suppress is decisional. For the reasons that follow, I deny the motion.

## Background

On March 23, 2011, OSHP Trooper Steven J. Basci began following the defendant's vehicle. He did so for about eleven miles before stopping him. During that period, he followed the defendant's car, pulling once alongside on the left and once on the right.

The defendant was driving at about sixty-four or sixty-five m.p.h.[1] He was looking straight ahead, with his hands at the "ten/two" position on the steering wheel.

---

[1] Contrary to Trooper's Basci testimony, this was not lower than a seventy mph speed limit. Though the Trooper testified otherwise, the posted limit was sixty-five, not seventy. A change in limit occurred shortly after the events giving rise to this case.

While the Trooper was beside the passenger side of the defendant's vehicle, a truck pulled in front of him. That caused a pickup truck to move over from that lane into the defendant's lane. When it did so, the pickup left only a short distance between it and the defendant's car.

The Trooper resumed position behind the defendant's car. He saw that for about a mile it remained, according to his estimate, about a car length and a half behind the pickup.

Concluding that the defendant had been following the pickup too closely in violation of the Ohio Traffic Code, the Trooper activated his overhead lights and pulled the defendant over.

The pertinent statutory provision states:

> The operator of a motor vehicle, streetcar, or trackless trolley shall not follow another vehicle, streetcar, or trackless trolley more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway.

O.R.C. § 4511.34(A).

In deciding to stop the defendant for violating this provision, Trooper Basci used an OSHP "rule of thumb" which requires a distance between vehicles in the same lane of one-car length per every ten miles per hour of vehicles' speed.

When Trooper Basci activated his overhead lights to signal the defendant to pull over, his patrol car's videorecorder camera also turned on.[2]

---

[2] Within thirty days after the stop, the OSHP erased the tape. Defense counsel asked the Trooper about what the tape would have shown as to the distance between the defendant's car and the truck ahead. Basci disputed the attorney's description of what would have been seen but for the erasure.

The failure to retain the tape following an arrest is troublesome and causes some problems, discussed below to a fully accurate assessment of the evidence and adjudication of the motion to suppress. But neither that failure nor the Trooper's disagreement with defense counsel give me any consequential concerns about the Trooper's testimony about what he saw.

On stopping the defendant, the defendant told Basci that the vehicle's owner was not present. He could not provide any information about his passengers, who spoke little or no English.

The passengers provided no state or federal identification. One had a Mexican election card.

When the Trooper asked the defendant "if they were supposed to be here," the defendant said, "No."

The Trooper called for Customs and Border Patrol assistance. In the meantime, he ran a criminal records check on the defendant, and learned that he had a prior arrest for alien smuggling. He put the defendant in the back seat of his patrol car and read him the Miranda warnings. The defendant gave incriminating statements.

By about ten minutes after the initial stop, Border Patrol Agent Alexander Chavez responded to the call for assistance. He briefly questioned the passengers, who confirmed they were here illegally. He arrested them.

After re-reading the Miranda rights to and obtaining a waiver from the defendant, Agent Chavez also questioned him. He again gave incriminating statements. Agent Chavez arrested the defendant.

After taking the defendant to the Sandusky, Ohio, Border Patrol station, Agent Chavez obtained a lengthy, detailed statement from him about his alien smuggling activities. The defendant declined, however, to sign a written statement.

The defendant seeks suppression of his own statements and dismissal of the indictment or an *in limine* ruling *vis-a-vis* testimony about the deported passengers' statements.

### Discussion

### 1. The Stop, Questioning and Detention Were Lawful

*A. The Stop*

The determinative issue with regard to the lawfulness of the stop is whether I believe Trooper Basci's testimony about seeing the defendant a car length and a half behind another vehicle at sixty-four or -five m.p.h. for about a mile.

I do, and do so despite the defendant attorney's enumeration of the reasons why I should not. Among these are inaccurate testimony about the defendant's driving below the lawful limit, the destruction of the videotape and the Trooper's mistaken testimony that he could have arrested the defendant for "human trafficking" when what the defendant was doing didn't fit the elements of that offense under Ohio law.

Bottom line: I simply have no doubt that the defendant failed, once the pickup truck cut in front of him, to back off and open up more distance between his vehicle and the pickup.

I also have little doubt, on the other hand, that Trooper Basci, having, apparently, seen the defendant and his Hispanic passengers, was waiting for the defendant to commit a traffic offense, no matter how minor, so that he could stop him and investigate further.

Once the Trooper saw the defendant as he continued to follow too closely to the pickup truck, he had probable cause to stop him for a violation of the Ohio Traffic Code. This is so, no matter how trivial the violation or pretextual the Trooper's motive was:

> In *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Supreme Court unanimously upheld a stop and temporary detention of a motorist by plainclothes drug interdiction officers who stopped a vehicle in a "high drug area" for failing to signal a right hand turn and moving away from the intersection at an "unreasonable rate of speed." The Supreme Court refused to question the officers' motives and found that issues of pretext and intent are irrelevant to the validity of a traffic stop. The Supreme Court held that, where probable cause that a traffic infraction has occurred exists, as this Court found existed here, a stop is valid under the Fourth Amendment, regardless of the trivial nature of the infraction or of the officer's subjective intent.

4

*U.S. v. Letourneau*, 944 F.Supp. 619, 623 (N.D. Ohio 1996).

Here, moreover, the infraction – following too closely at high, albeit lawful speed, is very dangerous and far from trivial.

The defendant complains about the Trooper's use of the "one car length per ten mph" standard for assessing whether a driver is following too closely. This is a commonplace and entirely appropriate way of determining whether a driver is following another vehicle "more closely than is reasonable and prudent, having due regard for the speed of such vehicle, . . ., and the traffic upon and the condition of the highway."[3]

The defendant appears be concerned that the Revised Code says nothing about how whether a driver is closer "than is reasonable and prudent" under the circumstances. His concerns are unpersuasive: the rule of thumb has no Fourth Amendment implications.

Indeed, having officers use this benchmark tends to cabin, rather than expand their discretion. It is, after all, objective and easily comprehended and applied. In contrast, the statutory language, "reasonable and prudent" is entirely subjective and expands, rather than limits and officer's discretion as to when to stop someone. The one car length/ten mph standard, while neither statutorily mandated nor as precise as speed detecting radar, serves pragmatically useful and constitutionally desirable functions.

---

[3] Ohio courts have consistently upheld the one car length/ten mph rule of thumb as applied to justify stops for violation O.R.C. § 4511.34(A). *See, e.g., State v. Stokes*, 2008 WL 4482800, *4 (Ohio App.) (collecting cases) ("Courts throughout Ohio have relied on the one-car-length [per-ten-miles-per-hour rule of thumb] to conclude that probable cause existed to support a stop for violating R.C. 4511.34."). Federal courts have acknowledged and followed the approach Ohio's courts, *U.S. v. Roberts*, 492 F. Supp.2d 771, 774 (S.D. Ohio 2005) (noting state courts' use of the rule of thumb); *see also U.S. v. Chapple*, 2010 WL 2817188, *2-3 (E.D.Mich.) (traffic stop lawful where defendant's car traveling seventy mph, was one and a half car lengths behind preceding vehicle; court notes one car length/ten mph standard).

There is no constitutional problem with the standard the Trooper used or the stop he made using it. Even though the defendant, as his attorney contends, was driving entirely lawfully, he was violating Ohio law when he remained as close as he did to the pickup truck for as long as he did.

I agree, in addition, with the holding in *U.S. v. Marmolejo*, 2007 WL 915195, *3 (S.D. Ohio 2007), that "Ohio Revised Code § 4511.34 is not unconstitutionally vague[.]"

### B. Questioning Following the Stop

Defendant contends the traffic stop, even if lawful, unlawfully morphed into an illegal detention when Trooper Basci started asking questions about the passengers. Or, if not then, when he decided to call and wait for Agent Chavez.

I disagree. The initial questions were a lawful incident to the initial stop. Ensuing questions had a basis in reasonable suspicion of unlawful activity. In any event, the period between the stop and development of probable cause was within the time typically required to engage in ordinary stop-related activities.

To remain lawful, a traffic stop can last no "longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). The issue is thus whether the officer's questions delayed the motorist's departure. *See Muehler v. Mena*, 544 U.S. 93, 100–01 (2005). "Mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434 (1991).

As stated in *U.S. v. Everett*, 601 F.3d 484, 494 (6th Cir. 2010) (quotation marks and emphasis omitted), "the proper inquiry is whether the 'totality of the circumstances' surrounding the stop indicates that the duration of the stop as a whole—including any prolongation due to suspicionless unrelated questioning—was reasonable." What the officer was asking about is simply

6

one part of the totality of the circumstances in the reasonableness assessment. *Id.* ("[T]he subject of those questions, no less than their quantity, is part of the 'totality of the circumstances' of the stop, and is therefore a relevant consideration.")

From the record at the suppression hearing, it appears that the Trooper's initial questions about the defendant's passengers were concurrent, or nearly so, with his inquiry about the vehicle's owner. On learning that the defendant could not provide any information about his passengers, who spoke little or no English, the Trooper had a reasonable and constitutionally sufficient basis for trying to learn more about the passengers. When none could provide any state or federal identification, and only one could provide any form of documentary identification – a Mexican election card – the Trooper had a reasonable basis, if not probable cause, for calling the Border Patrol.[4] By then, the stop had lasted only ten minutes, which is not an unreasonable period within which to complete stop-related procedures.[5]

I conclude, accordingly, that at no time did the defendant's detention exceed what the Fourth Amendment allows.

## 2. The Defendant's Statements are Admissible

---

[4] Constitutionality does not depend on a stopwatch. But the record would have been clarified as to the period of delay if the videorecording were available. In future cases where a recording has been made and a vehicle's occupants have been arrested, a vehicle searched and contraband discovered, or something else has happened to make prosecution likely, I will expect a more substantial explanation for any failure to keep the original or a copy of the recording than that given here. While I find it more likely than not that the Trooper's questioning about the passengers' apparent alienage was coincident with other questions properly related to the purpose of the stop, the recording could have make the timing and sequence indisputable.

[5] At least one other circuit has observed that "fourteen minutes is not unreasonably long for a traffic stop." *U.S. v. Turvin,* 517 F.3d 1097, 1102 (9th Cir. 2008).

It was not necessary to provide *Miranda* warnings at the outset of the stop or prior to the defendant's admission that the passengers were not legally here. Shortly thereafter, following receipt of the warnings, he gave incriminating statements. He gave more incriminating statements to Agent Chavez, who also "mirandized" him, before his arrest. He later gave the Agent additional post-warning statements after his arrest.

The government thus provided a *prima facie* basis for finding the statements admissible. The defendant produced no evidence to the contrary. His motion, to the extent it seeks to suppress his pre- and post-arrest statements, is overruled.

### 3. Deportation Does Not Require Dismissal

In *U.S. v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982), the Supreme Court held that, to secure dismissal of an indictment on the basis that the government has deported potential witnesses, a defendant "must at least make some plausible showing of how their testimony would have been both material and favorable to his defense."

The defendant has not met this burden. Indeed, it appears that any testimony the unavailable witnesses might give would be unhelpful to his defense.

To the extent the defendant seeks dismissal on the basis that his passengers were deported, it is overruled.

### 4. Passengers' Statements

Because neither party has addressed in any meaningful way the question of whether the passengers' answers to questions by the Trooper and Agent were "testimonial" or "nontestimonial" under the Sixth Amendment, I defer ruling on this question until trial.

### Conclusion

For the forgoing reasons, it is hereby

ORDERED THAT

1. Defendant's motion to suppress and dismiss (Doc. 11) be, and the same hereby is denied; and

2. Ruling be, and the same hereby is held in abeyance *vis-a-vis* defendant's motion to preclude evidence of statements attributable to deported witnesses.

3. Parties to file pretrial motions/status report not later than November 14, 2011. Time deemed excludable in the interest of justice.

So ordered.

/s/ James G. Carr
Sr. United States District Judge